**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United Sates of America,

          Plaintiff,

v.

Abdiaziz Shafii Farah,

          Defendant.

Case No. 24-cr-173 (1) (DSD/DLM)

**REPORT AND**
**RECOMMENDATION**

---

This matter is before the Court on Defendant Abdiaziz Farah's Motion to Suppress Search and Seizure Evidence (Doc. 119). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Defendant's challenge is a so-called "four corners" one, asking the Court to determine the warrant's validity based on its supporting documentation alone. The parties informed the Court that no witnesses or other evidence would be proffered beyond the warrant materials, and accordingly agreed to cancel the motion hearing scheduled for January 9, 2025, and have the Court decide Defendant's motion based on the parties' written submissions. (Doc 132.) The Court established a briefing schedule on the motion which concluded on January 23, 2025. (*Id.*) The motion is now ripe for the Court's decision. For the reasons explained below, the Court recommends that Mr. Farah's Motion to Suppress Search and Seizure Evidence (Doc. 119) be denied.

**BACKGROUND**

On June 25, 2024, Mr. Farah was charged by four-count indictment with Conspiracy to Bribe a Juror, in violation of 18 U.S.C. § 371 (Count 1); Bribery of a Juror, in violation of 18 U.S.C. § 201 (Count 2); Corruptly Influencing a Juror, in violation of 18 U.S.C. § 1503 (Count 3); and Obstruction of Justice, in violation of 18 U.S.C. § 1512 (Count 4). (*See generally* Doc. 1.) The charges here stem from another criminal case within this District in which Mr. Farah is also a defendant—*United States v. Farah et al.*, 22-cr-124 (NEB/DTS). On June 4, 2024, law enforcement sought and obtained a warrant to search Mr. Farah's home for evidence of his involvement in the alleged attempted bribery of one of the jurors in 22-cr-124. (*See generally* Doc. 127-1.) In support of probable cause for the warrant, the affidavit explains that the trial in 22-cr-124 began on April 22, 2024. (*Id.* ¶ 7.) During the first week of the trial, a jury was selected and seated. (*Id.* ¶ 8.) One of the jurors selected to serve in the trial was Juror #52. (*Id.*) The public had no access to the jurors' personal information, but counsel for the government, defense counsel, and the seven Defendants on trial all had access to this information. (*Id.*)

The affidavit states that on June 2, 2024, the night before the trial was to conclude, a woman approached Juror #52's home and rang the doorbell. (*Id.* ¶ 10.) Juror #52 was not home then, but their relative answered the door. (*Id.*) The woman at the door handed a gift bag to the relative and said it was a present for Juror #52, using Juror #52's first name. (*Id.*) The woman told the relative that if Juror #52 voted not guilty during jury deliberations, there would be more of that present tomorrow. (*Id.*) After the woman left, Juror #52's relative looked inside the gift bag and saw that it contained a substantial amount of cash in

various dollar denominations. (*Id.*) When Juror #52 returned home and was told of the encounter, Juror #52 called law enforcement to report the incident. (*Id.*) Law enforcement responded, and Juror #52 handed over the gift bag to police. (*Id.*) The bag contained approximately $120,000 in cash. (*Id.*)

The affidavit then explains that on the morning of June 3, 2024, the trial judge, counsel for the government, and defense counsel learned of the attempted bribe of Juror #52. (*Id.* ¶ 11.) After news of the attempted bribery was disclosed, an FBI agent who had been present during the entire trial observed Mr. Farah "act differently than [he] had throughout the trial." (*Id.*) According to the affidavit, Mr. Farah "appeared to be nervous, which was in contrast to [his] notably laid-back manner throughout the preceding six weeks of the trial." (*Id.*)

Next, the warrant affidavit describes how the government moved to take custody of the defendants' cell phones to "freeze" the scene. (*Id.* ¶ 12.) The trial judge ordered the defendants—including Mr. Farah—to place their phones in airplane mode and immediately surrender them to law enforcement. (*Id.*) At this point, an "FBI agent observed Abdiaziz Farah continue to use his phone for what appeared to be longer than necessary to place the phone in airplane mode." (*Id.*) The seven defendants surrendered their cell phones to the FBI that morning. (*Id.* ¶13.) The affidavit continues, "[w]hen FBI agents later attempted to review Abdiaziz Farah's cell phone, they found the cell phone screen displayed the factory settings as if it was a brand-new phone being set up for the first time." (*Id.* ¶ 14.) The affidavit explains that based on the affiant's "training and experience, this is consistent with the phone having been reset to factory settings, which erases all the content from the

3

phone." (*Id.*) Abdiaziz Farah was ordered detained on June 3, 2024. (*Id.*) "According to the United States Probation and Pretrial Services office, Abdiaziz Farah had been living at the Subject Premises while on pretrial release in [22-cr-124]." (*Id.*)

The affidavit sought "permission to search for records that might be found at the Subject Premises, in whatever form they are found." (*Id.* ¶ 19.) Attachment B lists specific items to be seized during the search, including "all evidence of violations of [18 U.S.C. § 201] (bribery of a juror) and [§ 1503] (influencing or injuring a juror), for the period of April 22, 2024, through present, related to the bribery or attempted bribery of a juror in [22-cr-124]." (*Id.* at 22, 22-29.) The undersigned Magistrate Judge signed the warrant to search Mr. Farah's home on June 4, 2024. (*Id.* at 28.)

In his suppression motion, Mr. Farah asserts that the "affidavit submitted in support of that warrant did not provide the magistrate with any reason to support a conclusion that contraband or evidence of a crime would be found at the residence." (Doc. 137 at 1.) Thus, according to Mr. Farah, "the warrant was completely defective for lack of probable cause[.]" (*Id.*) And what's more, in Mr. Farah's estimation, the *Leon*[1] good-faith exception fails to save the warrant because "no reasonable peace officer executing the warrant could have relied in good faith on it in executing the warrant." (*Id.*)

The government, for its part, counters that the "facts, as described in the affidavit, more than suffice to provide probable cause to search Abdiaziz Farah's residence." (Doc. 127 at 7.) But, says the government, even if the warrant were constitutionally lacking,

---

[1] *United States v. Leon*, 486 U.S. 897 (1984).

"execution of this warrant was not objectively unreasonable—entitling the search to good-faith treatment under [*Leon*]." (*Id.*) Thus, according to the government, Mr. Farha's motion should be denied.

## ANALYSIS

### I.   PROBABLE CAUSE SUPORTS THE WARRANT TO SEARCH MR. FARAH'S RESIDENCE.

The Fourth Amendment requires that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [them] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007) (quoting *Gates*, 462 U.S. at 238). Courts should read affidavits with "common sense and 'not in a . . . hyper technical fashion.'" *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998)). And courts may only consider the information found within the four corners of the affidavit in determining whether probable cause for the warrant exists. *United States v. Hussein*, No. 20-cr-75 (ADM/BRT), 2020 WL 7685372, at *2 (D. Minn. Oct. 21, 2020), *R. & R. adopted*, 2020 WL 7310899 (D. Minn. Dec. 11, 2020). "However, judges are permitted to draw

reasonable inferences from the totality of the circumstances when making the probable cause determination." *United States v. Santos-Hunter,* No. 23-CR-310 (DWF/DJF), 2024 WL 2892862, at *5 (D. Minn. Mar. 6, 2024) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)) (cleaned up), *R. & R. adopted,* 2024 WL 1928711 (D. Minn. May 2, 2024).

Here, the warrant affidavit described the totality of the circumstances leading up to law enforcement's application for the warrant—Mr. Farah's trial in 22-cr-124; the attempted bribery of Juror #52; Mr. Farah's nervous conduct in court after the bribery scheme was disclosed; his continued use of and delay in surrendering his cell phone to law enforcement after the phone's court-ordered seizure; and, importantly, the phone's apparent resetting to factory settings. Together, these circumstances establish probable cause for Mr. Farah's suspected involvement in the alleged bribery scheme. The affidavit also explained Mr. Farah's connection to the residence to be searched stating that the United States Probation and Pretrial Services office reported that Mr. Farah had been living at that address throughout his pretrial release. Finally, the affidavit described, in Attachment B, the specific items inside Mr. Farah's home which law enforcement sought as evidence of bribery.

Mr. Farah argues that the affidavit fails to establish probable cause because it does not allege any connection between Mr. Farah's residence and criminal activity. But even though the affidavit fails to explicitly allege that criminal activity occurred inside Mr. Farah's residence, it was reasonable to infer from the facts in the affidavit that, if Mr. Farah was part of the bribery scheme, he would likely keep evidence of the crime inside his

residence. *See United States v. Neadeau,* No. 20-CR-0224 (WMW/LIB), 2021 WL 3674496, at \*2 (D. Minn. Aug. 19, 2021) (noting that magistrates may draw reasonable inferences about where evidence is likely to be kept). And given the reasonable inference that Mr. Farah wiped his phone clean moments before surrendering it to law enforcement in court, it was reasonable for law enforcement to suspect Mr. Farah might have related incriminating information on electronics in his home, and that such information might be subject to destruction if not seized.

## II.    GOOD FAITH.

While evidence seized under the authority of a defective warrant will generally be excluded, under the *Leon* good-faith exception, "evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *Proell*, 485 F.3d at 430 (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (cleaned up)). To determine whether a law enforcement officer had "an objectively reasonable belief in the existence of probable cause," courts assess "the totality of the circumstances, including information known to the officer but not presented to the issuing judge." *United States v. Norey,* 31 F.4th 631, 635 (8th Cir. 2022), *reh'g denied,* No. 21-2406, 2022 WL 13748851 (8th Cir. Oct. 24, 2022) (quoting *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)).

Although the Court finds the residence warrant was supported by probable cause, the Court also finds that even if there were a constitutional deficiency within the warrant, the good-faith exception applies. No evidence within the affidavit or warrant suggests that law enforcement's reliance on the residence warrant was not in good faith or unreasonable. Considering the totality of the circumstances, it was reasonable for law enforcement to believe there was probable cause for the residence warrant. Accordingly, the Court concludes that the good-faith exception would apply to the residence warrant and the evidence discovered because of its execution should not be suppressed even if the warrant were unconstitutional. The Court therefore recommends denying Mr. Farah's motion to suppress evidence.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1.  Defendant Abdiaziz Farah's Motion to Suppress Search and Seizure Evidence (Doc. 119) be **DENIED**.

Date: February 24, 2025                          *s/Douglas L. Micko*
                                                 DOUGLAS L. MICKO
                                                 United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).