UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-173(2) (ECT)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ABDIMAJID MOHAMED NUR,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy, Assistant United States Attorney, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 78 months' imprisonment, the high-end of the guidelines range contemplated in the parties' plea agreement.

**THE OFFENSE CONDUCT**

On April 22, 2024, jury selection began in the case of United States v. Farah et al., 22-124 (NEB), in which the Mr. Nur was a defendant. Soon after the jury was selected, Mr. Nur and his co-defendants in Abdiaziz and Said Farah, concocted a scheme to bribe a juror in exchange for a not-guilty verdict. They identified Juror 52 as the best candidate to bribe—believing her to be the youngest and only person of color on the jury—and began making plans to bribe

her. The three began researching Juror 52 online, including locating her home address. They also had Abdulkadim Farah, Abdiaziz and Said's younger brother, conduct surveillance of Juror 52 and of Juror 52's house, including identifying where Juror 52 parked her car during her jury service.

Soon thereafter, Mr. Nur recruited a former girlfriend, Ladan Ali, to help plan and deliver the bribe. On May 30, 2024, Ladan flew from her home in Seattle, Washington, to Minneapolis, Minnesota, to execute the juror bribery scheme. Mr. Nur provided Ladan a photo of Juror 52's car, which he told Ladan Juror 52 parked in the Jerry Haaf Memorial Parking Ramp every day during trial. On May 31, 2024, the first day of closing arguments, Ladan followed Juror 52 from the Haaf ramp to her home. Ladan continued to surveille Juror 52's home over the ensuing three days.

On June 2, 2024, Mr. Nur met Abdiaziz and Said at Said's business, Bushra Wholesalers, in South Minneapolis, where Said gave Mr. Nur $200,000 in cash. Mr. Nur took the money to a parking lot in Bloomington, where he transferred it to Ladan. Mr. Nur instructed Ladan to go to a gas station near Juror 52's house, where she would rendezvous with Abdulkarim and then deliver the bribe.

Because Abdiaziz and Said did not trust Ladan, they instructed Abdulkarim to meet Ladan at the gas station. He was told to drive Ladan in her rental car to Juror 52's home to deliver the bribe payment, and to record

the exchange. Ladan and Abdulkarim met at the gas station later that evening as instructed. Abdulkarim first drove Ladan to a Target store where he purchased a screwdriver and removed the license plate from Ladan's rental car. He then drove Ladan to Juror 52's house. While Ladan walked the bribery payment to Juror 52's front door, Abdulkarim took a video with his cell phone. The video shows Ladan approach the front door and hand a bag containing the bribery payment to Juror 52's stepfather, telling him it was a "present" for Juror 52 and that there would be more if she voted not guilty. Abdulkarim sent the video via the Signal encrypted messaging app to his brother Abdiaziz as proof that the bribe was delivered. Ladan texted Mr. Nur "It's done babe." Abdiaziz later forwarded the video to Mr. Nur

To her credit, Juror 52 immediately reported the bribery attempt to the police. The next morning, prosecutors reported the bribe to the Court, and the Court ordered the defendants immediately to surrender their phones to law enforcement. But before law enforcement took it, Mr. Nur deleted the Signal app from his phone. A deleted note was later recovered from his phone that contained 30 talking points Ladan was supposed to convey to Juror 52 to help her "convince other jurors."

The jury returned its verdict on June 7, 2024, convicting Mr. Nur on various counts. He was sentenced to 120 months imprisonment on November 24, 2025.

One June 25, 2024, a federal grand jury indicted Mr. Nur with one count of conspiracy to bribe a juror, one count of bribing a juror, and one count of corruptly influencing a juror. He pleaded guilty about one month later, on July 23, 2024, to one count of bribing a juror.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

### A. Sentencing Guidelines Range

The government agrees that the base offense level is 12, pursuant to U.S.S.G. § 2C1.1(a)(2). The government agrees that the offense level should be increased by 10 levels pursuant to U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(1)(F)

because the value of the bribe was more than $150,000 but less than $200,000, by 4 levels pursuant to U.S.S.G. § 2C1.1(b)(3) because a juror is a public official, and by another 2 levels because the defendant attempted to obstruct and impede the administration of justice with respect to the investigation of the instant offense, pursuant to U.S.S.G. § 3C1.1. Although the government does not dispute a 3-level increase applies because the defendant was on pretrial release at the time of the offense, pursuant U.S.S.G. § 3C1.3, that enhancement was not contemplated by the parties in the plea agreement and so the government will not advocate for it at sentencing. The government further agrees that the offense level should be reduced by 3-levels for acceptance of responsibility, pursuant to U.S.S.G. § § 3E1.1(a)-(b), and by another 2-levels because the defendant was a minor participant in the bribery scheme, pursuant to U.S.S.G. § 3B1.2(b). Finally, the government agrees that the defendant falls into criminal history category II.

With a total offense level of 28 and a criminal history category II, the sentencing Guidelines range is 87-108 months' imprisonment

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further

crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

### 1. Nature and Circumstances of the Offense

Mr. Nur committed a profoundly serious crime that merits a serious sentence. Tampering with juries, whether by bribery or intimidation, compromises our entire legal system. It undermines public trust in the fairness of criminal trials by corrupting the bedrock principle that an impartial jury will render its verdict based solely on the facts presented at trial. It is not hyperbolic to say that without trust that our criminal courts will deliver justice fairly, the vitality of our democracy is threatened.

### 2. History and Characteristics of the Defendant

Mr. Nur was born in Somali in 2001, but moved with his family to Egypt in 2004, and then to the United States in 2010. He has six siblings, who all live in Shakopee. He is single without children.

Mr. Nur graduated from Shakopee High School in 2019. He obtained a bachelor's degree in healthcare management from Herzing University in 2022. Mr. Nur took one semester of graduate level classes at the University of Minnesota but stopped due to his criminal trial in the underlying fraud case. He was a member of the Army Reserves from 2019 to his incarceration in June 2024. He has held various jobs, including working at a call center, a building materials store, and as an Uber driver.

Mr. Nur was convicted in June 2024 of defrauding the Federal Child Nutrition Program of $47 million—money intended to provide meals to needy children during the COVID-19 pandemic. He was convicted by the same jury he brazenly tried to corrupt by bribing one of its members.

Mr. Nur's involvement in the underlying Feeding Our Future fraud scheme included creating and submitting Federal Child Nutrition Program reimbursement claims, including fraudulent meal counts, invoices, and roster, falsely alleging that he and his co-conspirators fed tens of thousands of meals a to needy children. He laundered the proceeds of the fraud scheme through shell companies he and his co-conspirators created, an used the money to purchase real estate in Kenya, expensive vehicles and jewelry, and a luxury vacation to the Maldives, where he stated in a private villa. Mr. Nur was sentenced in November 2025 to 120 months imprisonment.

**3. Deterrence, Respect for the Law, and Protecting the Public**

Mr. Nur's conduct is so abhorrent and destabilizing that the Court should send a strong message to the community that such behavior simply will not be tolerated. Others who might consider bribing a juror must know that doing so will result in devastating consequences. The court should send a message to the public that justice is not, and never will be for sale, and that those who jeopardize the integrity of our judicial system will pay a very heavy price.

### 4. The Need to Avoid Unwanted Disparities

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, defendants sentenced within the past four years under the same guideline provision and with the same offense level and criminal history as Mr. Nur received an average sentence of 56 months. The Court should bear in mind, however, that the bribery scheme perpetrated by Mr. Nur is so unprecedented and brazen that there simply are not defendants whose offense conduct is analogous. The government therefore respectfully suggests that when considering the need to avoid sentencing disparities, the Court should place greater weight on the applicable sentencing guideline range than on the judiciary sentencing information.

Moreover, one of Mr. Nur's co-defendants in the bribery scheme, Abdiaziz Farah, received a sentence of 120 months, while another of his co-defendants, Abdulkarim Farah, received a sentence of 57 months. But Abdiaziz received a 4-level leader/organizer enhancement, while Abdulkarim received a 2-level minor participant reduction. A sentence of 78 months is therefore warranted.

## **CONCLUSION**

For the reasons stated above, the government respectfully recommends that the Court sentence Mr. Nur to 78 months' imprisonment. Such a sentence is sufficient but not greater than necessary to meet Section 3553(a) factors.

Respectfully Submitted,

Dated: September 4, 2026,

DANIEL N. ROSEN
United States Attorney

/s/ *Matthew C. Murphy*
BY: MATTHEW C. MURPHY
Assistant U.S. Attorney