UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-173(3) (ECT)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S POSITION** |
| v. | ) | **REGARDING SENTENCING** |
| | ) | |
| SAID SHAFII FARAH, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy, Assistant United States Attorney, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 78 months' imprisonment, the high-end of the guidelines range.

## THE OFFENSE CONDUCT

On April 22, 2024, jury selection began in the case of *United States v. Farah et al.*, 22-124 (NEB), in which the defendant and his brother, Abdiaziz Farah, were defendants. Soon after the jury was selected, Abdiaziz and another co-defendant in that case, Abdimajid Nur, decided to bribe a juror exchange for a not-guilty verdict. Abdiaziz quickly identified Juror 52 as the best candidate to bribe—believing her to be the youngest and only person of color on the jury—and he and Abdimajid began making plans to bribe her. The two began

researching Juror 52 online, including locating her home address. They also had the defendant's younger brother, Adbulkadir Farah, conduct surveillance of Juror 52 and of Juror 52's house, including identifying where Juror 52 parked her car during her jury service.

Soon thereafter, Abdimajid recruited a former girlfriend, Ladan Ali, to help plan and deliver the bribe. On May 30, 2024, Ladan flew from her home in Seattle, Washington, to Minneapolis, Minnesota, to execute the juror bribery scheme. Abdimajid provided Ladan a photo of Juror 52's car, which he told Ladan Juror 52 parked in the Jerry Haaf Memorial Parking Ramp every day during trial. On May 31, 2024, the first day of closing arguments, Ladan followed Juror 52 from the Haaf ramp to her home. Ladan continued to surveille Juror 52's home over the ensuing three days, and the Abdiaziz ordered a magnetic GPS tracker to be placed on Juror 52's car to make surveillance easier.

Abdiaziz told the defendant of the plan to bribe Juror 52 the night of June 1, 2024, including the need to collect money for the payment. The following morning, Abdiaziz sent the defendant an encrypted Signal message telling him to "have the money ready" by 10:00. The defendant collected a total of $200,000 in cash from multiple individuals and from a Hawala located at the Karmel Mall, in Minneapolis. Later that day, the defendant met Abdiaziz and Abdimajid at his business, Bushra Wholesalers, where he gave Abdimajid

the $200,000 cash. Abdimajid took the money to a parking lot in Bloomington, where he transferred it to Ladan. Abdimajid instructed Ladan to go to a gas station near Juror 52's house, where she would rendezvous with Abdulkadir.

Because the defendant and Abdiaziz did not trust Ladan, they instructed their younger brother, Abdulkadir, to meet Ladan at the gas station. He was told to drive her in her rental car to Juror 52's home to deliver the bribe payment, and to record the exchange. Ladan and Abdulkadir met at the gas station later that evening as instructed. Abdulkadir first drove Ladan to a Target store where he purchased a screwdriver and removed the license plate from Ladan's rental car. He then drove Ladan to Juror 52's house. While Ladan walked the bribery payment to Juror 52's front door, Abdulkadir took a video with his cell phone. The video shows Ladan approach the front door and hand a bag containing the bribery payment to Juror 52's stepfather, telling him it was a "present" for Juror 52 and that there would be more if she voted not guilty. Abdulkadir sent the video via the Signal encrypted messaging app to Abdiaziz as proof that the bribe was delivered. Abdiaziz forwarded the video to the defendant, with the message "watch and delete."

To her credit, Juror 52 immediately reported the bribery attempt to the police. The next morning, prosecutors reported the bribe to the Court, and the Court ordered the defendant immediately to surrender his phone to law enforcement. Before law enforcement officers could confiscate his phone,

however, the defendant deleted the messages relating to the bribery scheme, to conceal his involvement. The defendant was ordered detained that same day. The jury returned its verdict on June 7, 2024, ironically acquitting the defendant on all counts.

On June 25, 2024, a federal grand jury indicted the defendant with one count of conspiracy to bribe a juror, one count of bribing a juror, one count of corruptly influencing a juror, and one count of obstruction of justice. One year later, on August 21, 2025, the defendant pleaded guilty to one count of bribing a juror.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally

decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A. Sentencing Guidelines Range

The government has no objections to the Guidelines calculation contained in the presentence report ("PSR"). Accordingly, the government agrees that the base offense level is 12, pursuant to U.S.S.G. § 2C1.1(a)(2). The government agrees that the offense level should be increased by 10 levels pursuant to U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(1)(F) because the value of the bribe was more than $150,000 but less than $200,000, by another 4 levels pursuant to U.S.S.G. § 2C1.1(b)(3) because a juror is a public official, by another 2 levels because the defendant attempted to obstruct and impede the administration of justice with respect to the investigation of the instant offense, pursuant to U.S.S.G. § 3C1.1, and by another 3 levels because the defendant committed the offense while he was on federal pretrial release, pursuant to U.S.S.G. § 3C1.3. The government agrees that the offense level should be reduced by 3 levels for acceptance of responsibility, pursuant to U.S.S.G. § § 3E1.1(a)-(b), and by another 2 levels because the defendant meets the criteria for the zero-point offender reduction pursuant to 18 U.S.S.G. § 4C1.1. Finally, the government agrees that the defendant falls into criminal history category I.

With a total offense level of 26 and a criminal history category I, the sentencing Guidelines range is 63-78 months' imprisonment.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

Mr. Farah committed a profoundly serious crime that merits an equally serious sentence. Tampering with juries, whether by bribery or intimidation, compromises our entire legal system. It undermines public trust in the fairness of criminal trials by corrupting the bedrock principle that an impartial jury will render its verdict based solely on the facts presented at trial. It is not hyperbolic to say that without trust that our criminal courts will deliver justice fairly, the vitality of our democracy is threatened.

**2. History and Characteristics of the Defendant**

Mr. Farah was born in Somalia in 1982. His mother was killed during the Somalian civil war when he was just a child. Shortly after, his father took Mr. Farah and his siblings to a refugee camp in Kenya, where he lived until

immigrating to the United States in 2006. Mr. Farah worked odd jobs until 2009, when he opened a grocery store in Minneapolis called Minnesota Food Market. In 2010, he opened a second store in Brooklyn Center called Brookdale Food Market, but Mr. Farah ended up selling both stores later that same year. In 2011, he opened a childcare business called Family Resource Childcare Center, which he sold in 2018. Around same time, Mr. Farah purchased a shopping plaza in Minneapolis.

Mr. Farah is not married but has four minor children with his significant other. He is in good physical and mental health. He has been incarcerated since June 24, 2024, when the scheme to bribe Juror 52 was discovered.

**3. Deterrence, Respect for the Law, and Protecting the Public**

Mr. Farah's conduct is so abhorrent and destabilizing that the Court should send a strong message to the community that such behavior simply will not be tolerated. Others who might consider bribing a juror must know that doing so will result in devastating consequences. Nothing less than a sentence at the high-end of the guidelines range will suffice to send the message that justice is not, and never will be for sale, and that the Court will levy maximum sentences upon those who jeopardize the integrity of our judicial system.

**4. The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, there was an insufficient

number of defendants sentenced within the past four years under the same guideline provision and with the same offense level and criminal history as Mr. Farah for the Probation Officer to conduct a statistical analysis of sentencing data. That is because the bribery scheme perpetrated by Mr. Farah is so unprecedented and brazen that there simply are no defendants whose offense conduct is analogous.

Mr. Farah's younger brother, who was a minor participant in the conspiracy to bribe Juror 52, was recently sentenced by the Court to 57 months, the high end of his guideline range. His other brother and codefendant, Abdiaziz Farah, who was the organizer and leader of the bribery scheme, recently was sentenced to 120 months' imprisonment—again the high-end of his guidelines range. It is right, therefore, that Mr. Farah, who was an average participant in the bribery scheme, receives a sentence of 78 months, the high-end of his guidelines range and squarely between his less culpable and more culpable coconspirators.

## CONCLUSION

For the reasons stated above, the government respectfully recommends that the Court sentence Mr. Farah to 78 months' imprisonment. Such a sentence is sufficient but not greater than necessary to meet Section 3553(a) factors.

Respectfully Submitted,

Dated: September 14, 2026,

DANIEL N. ROSEN
United States Attorney

/s/ *Matthew C. Murphy*
BY: MATTHEW C. MURPHY
Assistant U.S. Attorney